UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SLICE INSURANCE                                              :
TECHNOLOGIES, INC.,                                          :
                                                             :
                                           Plaintiff,        :   24 Civ. 9803 (LGS)
                                                             :
                      -against-                              :
                                                             :   **OPINION & ORDER**
APPALACHIAN UNDERWRITERS, INC.,                              :
                                                             :
                                           Defendant.        :
                                                             :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

  Plaintiff Slice Insurance Technologies, Inc. ("Slice") brings this action against Defendant Appalachian Underwriters, Inc. ("AUI") alleging breach of contract, trade dress misappropriation under both federal and Tennessee law, and violation of the Tennessee Personal and Commercial Computer Act. Defendant brings a partial motion to dismiss for failure to state claims for (1) breach of Plaintiff's Terms of Use and (2) trade dress infringement. For the reasons below, Defendant's motion is granted in full.

**I. BACKGROUND**

  The following facts are taken from the Complaint, documents attached to the Complaint and documents it incorporates by reference. *See Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). These facts are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

  Slice sued AUI alleging unauthorized cloning of Slice's proprietary online insurance platform. Plaintiff is an insurance technology company that offers a customizable digital

platform for the sale and management of insurance (the "Generic Platform"). Defendant, a Tennessee corporation, is a wholesale insurance brokerage that provides various lines of insurance products to retail insurance agents.

In June 2020, Plaintiff and Defendant began discussions regarding the development of a customized online platform for Defendant's agents to sell insurance and related services (the "Customized Platform"). Plaintiff met with Defendant to provide an overview and demonstration of the Generic Platform and the ways it could be optimized for Defendant. Defendant had previously tried to build an in-house equivalent but failed to create an acceptable platform for its agents. In July 2020, the parties continued to discuss a potential relationship and executed a Mutual Confidentiality and Nondisclosure Agreement (the "NDA"), which provided Defendant access to proprietary and confidential information regarding Slice's platform architecture.

Between August and October 2020, Plaintiff began designing and building the Customized Platform. During this period, Plaintiff continued to disclose its proprietary and confidential information regarding Slice's platform architecture including: (a) wireframes and other screen design information for the platform's user interface, (b) journey maps and other product design information regarding the navigation and flow of the online platform and (c) algorithms utilized in the online platform.

On October 12, 2020, the parties executed a licensing agreement (the "Licensing Agreement") under which Plaintiff granted Defendant a limited license to "operate and use the [Customized] Platform solely to market, bind or sell (or effect actions necessary or directly related to the foregoing)" certain insurance products to Defendant's agents. The Licensing Agreement also contained confidentiality obligations, including "restriction on the use,

disclosure, or distribution of confidential information" and limited disclosure to "employees, officers, agents and contractors who have a need to know for purposes of (a) such party's performance of its obligations under the Licensing Agreement or (b) supporting the party's use of intellectual property rights granted the party; provided, however, that such disclosure and distribution include only those portions of confidential information that such employee, officer, agent or contractor needs to know."

On June 28, 2021, the parties launched the first live implementation of the Customized Platform, "a commercial general liability policy functionality for [retail] agents to use with a specialty general liability carrier." The initial launch of the Customized Platform required a user to accept Slice's Terms of Use (the "Initial TOU") upon access. The Initial TOU expressly stated that the user:

> will not allow any third party, to . . . copy, sell, license, distribute, transfer, modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source code from, the Services, Application or Website, or content that may be presented or accessed through the Services, Application or Website for any purpose, unless otherwise permitted by us or the functionality of the Services . . . .
>
> [and that t]he content, arrangement and layout of the Services, Website and Application, including but not limited to the trademarks, photos, logos, videos, audio, images, text (in the form of plain text, HTML, or PDFs) and computer code are proprietary to Slice or the Third-Party Insurer (if applicable), either owned or under license, and may not be copied, imitated, reproduced, displayed, distributed, transmitted, decompiled or otherwise used without the express permission of Slice, or as permitted by the functionality of the Services, Website or the Application or these TOU.

Between June 2021 and February 2022, the parties continued their relationship by enhancing the functionality of the Customized Platform and enrolling additional retail agents. Gross premiums from policy sales grew from $42,500/month in June 2021 to $187,000/month in January 2022.

In February 2022, Plaintiff updated the Terms of Use (the "February 2022 TOU"). Like the previous version, the February 2022 TOU included the same restrictions on copying, imitating, reproducing and distributing proprietary information related to the Customized Platform.

Between March 2022 and April 2023, the parties increased the functionality of the Customized Platform for both general liability and workers' compensation, increased gross premiums, added additional carriers, and added new insurers.

On April 28, 2023, Plaintiff once again updated the Terms of Use (the "April 2023 TOU"), repeating the prior versions' provisions that a user agreed to the Terms of Use ("TOU") by use of the Customized Platform and agreed not to use the platform to violate any intellectual property rights of Slice or third parties. The April 2023 TOU included nearly identical language to the prior TOUs, requiring acknowledgement that the user:

> will not, and will not allow any third party, to (i) copy, sell, license, distribute, transfer, modify, adapt, translate, prepare derivative works from, decompile, reverse engineer, disassemble or otherwise attempt to derive source code from, the [Customized] Platform, or content that may be presented or accessed through the [Customized] Platform (except Customer Data) for any purpose, unless otherwise permitted by the TOU or the functionality of the [Customized] Platform . . . .
>
> The content, arrangement and layout of the [Customized] Platform, including but not limited to the trademarks, photos, logos, videos, audio, images, text (in the form of plain text, HTML, or PDFs) and Computer Code are proprietary to Slice or the Distributor, either owned or under license, and may not be copied, imitated, reproduced, displayed, distributed, transmitted, decompiled or otherwise used without the express permission of Slice, or as permitted by the functionality of the [Customized] Platform or these TOU.

Between April 2023 and March 2024, the parties continued to add increased functionality and new carriers to the Customized Platform.

4

On March 18, 2024, Defendant unexpectedly terminated the Licensing Agreement. A few days later, on March 25, 2024, Defendant launched its own online platform, which replaced the Customized Platform (the "Cloned Platform").

Around this time, Plaintiff began receiving support calls from Defendant's retail agents purportedly about the Customized Platform. These calls reported issues, which Plaintiff's technical support team was unable to replicate. Eventually, Plaintiff came to believe that the support questions did not relate to the Customized Platform but instead, the Cloned Platform. Among other things, "[Defendant's retail] agents also advised Slice that the Cloned Platform was nearly identical in functionality, organization, entry of information on the screens, the flow of screens, and the 'look and feel'" -- including by identifying Plaintiff as the contact for technical issues.

The Complaint alleges that, after gaining access to the Customized Platform, Defendant used Slice's proprietary information to build an in-house competitive online platform, which was virtually identical to the Customized Platform. To do so, Defendant allegedly provided software developers in India and Pakistan access to the Customized Platform from December 17, 2022, through March 5, 2024. The Complaint alleges that by providing offshore third-party developers access to Plaintiff's proprietary information, Defendant materially breached the parties' agreements (including the Licensing Agreement and the TOUs) and violated both the Lanham Act and Tennessee state law.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021).[1] It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Under Rule 12(b)(6), a court "accept[s] as true all well-pleaded factual allegations, draw[s] all reasonable inferences in the plaintiff's favor, and assess[es] the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024). A court does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

### III. DISCUSSION

#### A. Contract Claim

Defendant first moves to dismiss in part the breach of contract claim. While Count One alleges breach of both the Licensing Agreement and the April 2023 TOU, Defendant seeks to dismiss only the latter portion of the claim. Defendant argues that the Complaint fails to plead that the April 2023 TOU is a binding and enforceable contract against Defendant; the Complaint states only that a "user agreed to the TOUs by use of the [Customized] Platform," but does not allege that Defendant was a "user" or that Defendant ever agreed to the TOUs. Defendant's motion to dismiss Plaintiff's breach of contract claim on the April 2023 TOU is granted.

New York law governs the claim for breach of the April 2023 TOU. The parties' Licensing Agreement provides that New York law will govern "[a]ll of the rights and duties of the Parties arising from or relating in any way to the subject matter of this Agreement." The April 2023 TOU also contains a New York choice of law provision. And the parties in their

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

briefing appear to assume that New York law governs the breach of contract claim. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31-32 (2d Cir. 2017) (explaining that where the parties' briefs assume that a particular state law controls, "such implied consent is . . . sufficient to establish the applicable choice of law").

To state a claim for breach of contract in New York, a plaintiff must plead the existence of a contract between itself and the defendant. *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2002); *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (New York law). "A binding contract requires an objective manifestation of mutual assent, through either words or conduct, to the essential terms comprising the agreement." *Wu v. Uber Techs., Inc.*, 260 N.E.3d 1060, 1070 (N.Y. 2024). A party can manifest assent by signing a written agreement, clicking an acceptance box or engaging in conduct that reasonably demonstrates agreement to be bound. *See Wu*, 260 N.E.3d at 1073; *Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc.*, No. 23 Civ. 2349, 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023) (New York law), *appeal dismissed*, No. 23-7837, 2024 WL 4866898 (2d Cir. May 28, 2024).

Here, the April 2023 TOU states that acceptance occurs "[b]y clicking or tapping the acceptance box upon signing up for an account" and that a user agrees to the Terms "by signing up for an account and using the Platform." The Complaint contains no allegation that Defendant, or anyone with the ability to bind Defendant, signed up for an account, clicked an acceptance box or otherwise manifested assent to the Terms of Use in the manner prescribed. Without allegations of mutual assent, the Complaint fails to plead contract formation and therefore fails to plead a sufficient claim for breach of the April 2023 TOU.

Plaintiff argues the Complaint implicitly asserts that Defendant was a "user" of the Customized Platform by alleging that Defendant and Plaintiff "added a new carrier" to the platform, that Defendant contacted Plaintiff regarding Defendant's inability to "access" the platform, that offshore developers "accessed" the platform on Defendant's behalf and that Defendant "continued to utilize the [Customized] Platform" after issuance of the April 2023 TOU. These allegations do not cure the pleading deficiency. Even accepting that Defendant accessed the Customized Platform, the Complaint alleges that Defendant worked on developing and maintaining the platform, not that Defendant was a "user" that signed up for an account as provided in the April 2023 TOU.

Any argument that Defendant's retail agents accessing the Customized Platform binds Defendant to the TOU is also unavailing. Separate from the alleged offshore developers, the Complaint states that "Defendant and its agents continued to utilize the Platform . . . including the agents' use of the platform to quote and bind policies with an effective date after May 31, 2024" -- i.e., after the April 2023 TOU issued. Read in context, these allegations refer to Defendant's retail agents who purchased insurance products from or through Defendant. These retail agents are, in effect, Defendant's customers, not parties acting on Defendant's behalf.[2] Under standard principles of agency law, "an agent must have authority, whether apparent, actual or implied, to bind his principal." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998) (New York law); *accord Rest. L. Ctr. v. City of New York*, 360 F. Supp. 3d 192, 230 (S.D.N.Y. 2019) (same). The Complaint does not allege facts sufficient to infer that any of these retail agents had actual or apparent authority to bind Defendant to the April 2023 TOU or

---

[2] The Complaint describes Defendant as "a nationwide master general agent, offering an insurance wholesale brokerage outlet providing a selection of workers compensation, commercial specialty, and personal lines products for insurance agents."

8

any other contract. Consequently, Plaintiff's argument that Defendant breached the April 2023 TOU fails.

Any purported claim that Defendant breached prior versions of the TOUs also fails. The Complaint alleges that Defendant's "breaches include, but are not limited to . . . ." two provisions of the Licensing Agreement and one paragraph of the April 2023 TOU, but does not specify any additional contracts or provisions that were breached. This open-ended, catch-all allegation does not give fair notice of the grounds for Plaintiff's claim and is too conclusory to satisfy Rule 8(a) or the pleading requirements of *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678. *See, e.g.*, *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 350-51 (S.D.N.Y. 2021) (New York law) (dismissing contract claim where plaintiff failed to plead, in nonconclusory fashion, the specific contractual provisions allegedly breached); *GEOMC Co. v. Calmare Therapeutics, Inc.*, No. 14 Civ. 1222, 2016 WL 6122930, at *5 (D. Conn. Oct. 19, 2016), *aff'd*, 918 F.3d 92 (2d Cir. 2019) (rejecting "including but not limited to" formulation as vague and insufficient to provide fair notice for an affirmative defense). Defendant's motion to dismiss the portion of Count One alleging breach of the April 2023 TOU is granted.

### B. Trade Dress Claims

Defendant moves to dismiss the trade-dress claims (Counts Two and Three) asserted under federal law and Tennessee state law for failure to state a claim. The state law claim is held in abeyance pending briefing on the applicability of Tennessee law. The federal claim is dismissed for insufficient pleading.

Count Three alleges "TN Unfair Competition" in violation of Tenn. Code Ann. §§ 47-18-101-138. Count Four, which is not at issue on this motion, alleges a violation of the Tennessee Personal and Commercial Computer Act. The parties did not address choice of law in

9

their briefing. Given the New York choice of law provision in the Licensing Agreement, the parties shall submit letter briefs addressing whether Tennessee statutory law governs Defendant's conduct. The motion to dismiss Count Three is held in abeyance subject to that briefing.

Count Two asserts trade dress infringement under the Lanham Act. To state a sufficient claim, "a plaintiff must plead that (1) its product design is distinctive, (2) there is a likelihood of confusion between its product design and that of the defendant, and (3) its product design is not functional." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 121-25 (2d Cir. 2025). "Before a court may evaluate the three elements of a trade dress infringement claim, however, a plaintiff must clearly articulate what it seeks to protect." *Id*. at 122. "Accordingly, separate from -- and in addition to -- pleading the three elements of its claim, a trade dress plaintiff must also articulate with precision the specific components of its claimed trade dress in the complaint." *Id*. Photographs can help illustrate the claim, but they are not a substitute for a clear enumeration of the elements as applied to specifically identified parts of the alleged trade dress. *See NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, No. 20 Civ. 8389, 2021 WL 3038497, at *6 (S.D.N.Y. July 16, 2021) ("[I]mages alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress."); *Nat'l Lighting Co. v. Bridge Metal Indus.*, 601 F. Supp. 2d 556, 563 (S.D.N.Y. 2009) ("[C]ourts cannot be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional.").

Defendant's motion to dismiss Count Two is granted. The Complaint includes side-by-side screenshots that put Defendant on notice of the similarities at issue, but the Complaint fails to enumerate the components of Plaintiff's trade dress that allegedly were infringed. *See, e.g.*, *Tentandtable.com, LLC v. Alijibouri*, No. 22 Civ. 78, 2025 WL 959656, at *10 (W.D.N.Y. Mar.

31, 2025) ("[T]he images the plaintiffs attached to the complaint do not relieve them of their obligation to precisely articulate the trade dress that they seek to protect.").

Contrary to Plaintiff's assertion, Defendant's discovery requests seeking identification of the "specific elements that are applied throughout the Slice Platform . . . in combination to create Slice's trade dress" does not moot the issue as Plaintiff's anticipated discovery responses do not cure inadequate pleading. Similarly, Plaintiff's inclusion in its briefing of a chart purporting to provide the missing detail is also unavailing. A plaintiff cannot amend its pleading through its briefing. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court . . . errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss."). Count Two is dismissed because the Complaint fails to plead trade dress infringement with the required specificity.

## IV. CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss is **GRANTED**. The following claims are dismissed: Count One to the extent it asserts a breach of the April 2023 TOU and Count Two in its entirety. Count Three is held in abeyance subject to further briefing. For clarity, the surviving claims that were not at issue on this motion are Count One, to the extent it alleges breach of Articles Two and Eight of the Licensing Agreement and Count Four.

The parties shall file supplemental letter briefs, not to exceed three pages each, addressing whether Plaintiff's Tennessee statutory claims in Counts Three and Four may proceed given the Licensing Agreement's choice-of-law provision and applicable New York choice-of-law principles, or whether New York law exclusively governs this action. Plaintiff shall file its submission by **November 14, 2025**; Defendant shall file its response by **November 21, 2025**. No replies shall be filed absent further order.

Following a decision regarding Counts Three and Four, a briefing schedule will be established for any motion for leave to replead.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 28.

Dated: November 10, 2025
       New York, New York

                                        LORNA G. SCHOFIELD
                                   UNITED STATES DISTRICT JUDGE