USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___ 2/23/2026 ___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SLICE INUSRANCE TECHNOLOGIES,
INC.,

                **Plaintiff,**

      -against-

APPALACHIAN UNDERWRITERS, INC.,

                **Defendant.**

------------------------------------------------------------------X

24-CV-9803 (LGS )(SN)

**ORDER**

**SARAH NETBURN, United States Magistrate Judge**:

The parties have submitted separate letter-motions regarding ongoing discovery disputes. See ECF Nos. 112, 113, 114, 115.

In light of Defendant Appalachian Underwriters, Inc.'s ("AUI") subsequently filed letter-motion seeking additional discovery in conection with the First Amended Complaint (see ECF No. 119), the Court does not address any deposition-related requests in this order and reserves those issues for resolution in due course. Plaintiff Slice Insurance Technologies, Inc. ("Slice") shall respond to AUI's second letter-motion by Thursday, February 26, 2026.

## DEFENDANT'S MOTION

AUI requests an informal conference regarding the refusal of Slice to produce all relevant source code of Slice's Insurance Cloud Software ("ICS").

### I.    Source Code Production

The First Amended Complaint (the "FAC") primarily alleges that AUI copied the "features, functionality, look and feel" of Slice's platform, not that it misappropriated Slice's proprietary back-end source code. Compelling production of highly confidential back-end source

code would be disproportionate to the needs of the case. AUI has not sufficiently demonstrated that the FAC's references to "features and functionality" of the ICS necessarily implicate back-end source code.

As to AUI's request for additional front-end source code, AUI argues that it is entitled to front-end source code from a pre-2020 iteration of the ICS platform and other iterations, largely on two grounds: (1) that Mr. Baserman reviewed another iteration to re-familiarize himself with the platform's architecture at the outset of the parties' relationship, and (2) that reviewing other iterations would show whether the allegedly cloned "features and functionality" or "look and feel" were standard across Slice's product line rather than unique to AUI's implementation.

On the present record, AUI has not shown why source code from other iterations would materially advance any claim or defense. Whether similar features existed in other Slice deployments does not resolve whether AUI misused its licensed access or breached contractual restrictions in developing Aero 2.0.

Mr. Baserman's testimony does not change that analysis. Slice represents, and the cited testimony supports, that Mr. Baserman reviewed screenshots—not source code—of an earlier iteration to refresh his recollection. See ECF No. 114-5 at 39:13-18. That testimony does not justify the wholesale production of front-end source code from unrelated iterations.

Finally, AUI seeks production of source code and related materials in support of its counterclaim alleging that, following termination of the Licensing Agreement, Slice improperly continued to operate the platform in a manner that allowed new policies to be bound, and falsely represented that it was technically infeasible to disable new business while continuing to service existing policies.

Whether such functionality was technically feasible is relevant. Mr. Baserman testified that it is "possible" to implement such functionality and that he believes it has been done for at least one other client. That testimony bears on AUI's contention that Slice could have disabled new business following termination of the Licensing Agreement. Still, Mr. Baserman's testimony reflects that disabling new business was not a standard or configurable feature but rather would require analysis and customer-specific development depending on the "details." See id. at 304:2-305:25. The feasibility dispute can therefore be explored through documentation and testimony describing what was implemented, how it was implemented, and under what circumstances, without exposing the source code itself. Given the sensitivity of source code and the availability of less intrusive means to assess feasibility, compelling production of source code—particularly code developed for other customers—would be disproportionate at this stage.

Accordingly, AUI's request for source code relating to disabling new business is DENIED, without prejudice to renewal if a concrete dispute arises after good-faith efforts to pursue targeted discovery.

## **PLAINTIFF'S MOTION**

Slice seeks a court order compelling AUI to supplement its responses to Slice's Requests for Admission ("RFAs") and compelling production of documents responsive to its Requests for Production ("RFPs") Nos. 26 and 54.

### I. Requests for Admission

Slice moves to compel substantive responses to 139 Requests for Admission ("RFAs"). AUI objects that the RFAs are excessive in number, rely on vague or disputed terms, seek admissions concerning conduct of non-parties, or improperly attempt to establish core liability through Rule 36 rather than through merits discovery.

3

"Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment. Thus, issues like authenticity of documents or admissions to uncontested facts are appropriate topics for an RFA. And while a "party must not object solely on the ground that the request presents a genuine issue for trial," Fed. R. Civ. P. 36(a)(5), Rule 36 is "not a discovery device" in the ordinary sense, and it may not be used to develop facts, test legal theories, or force concessions on matters at the core of the litigation. In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., No. 21-cv-7504 (VSB), 2023 WL 18979521, at *3 (S.D.N.Y. Feb. 10, 2023).

Having reviewed the RFAs and responses, the Court finds that many of the challenged requests exceed the proper scope of Rule 36. Numerous RFAs seek admissions that AUI "distributed" or "copied" the Slice platform, employing undefined and loaded terms in ways that collapse disputed factual and legal issues into a single admission or denial. See ECF No. 113-1 at 19, 25, 27. Although AUI's objections are not uniformly tailored on a request-by-request basis, the volume and structure of the RFAs, taken as a whole, reflect an attempt to litigate core liability issues through admissions rather than to narrow the issues for trial.

Accordingly, Slice's motion to compel further responses to the RFAs is DENIED, without prejudice. This ruling does not preclude Slice from serving a reduced set of narrowly tailored RFAs directed to discrete factual matters susceptible to admission or denial after reasonable inquiry.

## II.     Requests for Production Nos. 26 and 54

Slice raises two potential disputes regarding its RFP Nos. 26 and 54. AUI maintains that it does not possess responsive materials to RFP No. 26 after reasonable searches, and that responsive materials to RFP No. 54 have been produced or are in the process of being produced following clarification. Since there is no basis for Court intervention, Slice's request for an order compelling production is DENIED, without prejudice.

## CONCLUSION

AUI's request for additional source code is DENIED.

Slice's request to compel supplemental responses to its RFAs is DENIED. Slice's request to compel responses to RFP Nos. 26 and 54 is DENIED subject to further meet and confers by the parties.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 113 and 112.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      February 23, 2026
            New York, New York

5